UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

ISAAC OKAFOR,

                    Plaintiff,          24-cv-5680 (JGK)

      - against -           MEMORANDUM OPINION
                                 AND ORDER

NEW YORK STATE INSURANCE FUND, ET
AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff, Isaac Okafor, brought this action against the New York State Insurance Fund ("NYSIF"), David Wertheim, James Fiedler, Charley McKay, and Michael Totaro (together with Wertheim, Fiedler, and McKay, the "individual defendants"), alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. The plaintiff also alleges retaliation and discrimination on the basis of national origin, race, and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981 ("§ 1981"); 42 U.S.C. § 1983 ("§ 1983"); the NYSHRL; and the NYCHRL.

    The defendants have moved to dismiss the Amended Complaint for lack of subject-matter jurisdiction under Federal Rule of

Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). For the reasons stated below, the defendants' motion is **granted in part** and **denied in part**.

I.

Unless otherwise indicated, the following facts are taken from the Amended Complaint and are accepted as true for purposes of deciding this motion.

A.

The plaintiff is a 66-year-old Black attorney of Nigerian national origin who has been employed by NYSIF, a state agency, since 2002. Am. Compl. ¶¶ 3, 15, 17-18, 47, ECF No. 25. The plaintiff alleges that he has had a "long and distinguished career" at NYSIF, served in various roles of increasing responsibility over the years, and received satisfactory performance reviews throughout his employment. See id. ¶¶ 49, 56. From 2002 to 2016 and from 2017 to May 28, 2024, the plaintiff has worked in the Legal Collections Department of NYSIF.[1] Id. ¶ 50.

At all relevant times, the individual defendants were employees of NYSIF. See id. ¶¶ 19-38. Wertheim, a white male in his 50s, served as Acting General Counsel of NYSIF; Fiedler, a

---

[1] From April 2016 to January 2017, Okafor was employed by the New York State Workers' Compensation Board as a Workers' Compensation Law Judge. Am. Compl. ¶ 51.

2

white male in his 60s, served as the Managing Attorney of NYSIF. Id. ¶¶ 19-20, 24-25. McKay, a white male in his 60s, was the Director of Legal Collections at NYSIF until he retired on April 27, 2023. Id. ¶¶ 29-30. Beginning April 27, 2023, Totaro, a white male in his early 40s, was the Director of Legal Collections at NYSIF. Id. ¶ 34. The plaintiff alleges that the individual defendants were responsible for ensuring that employees in NYSIF's Legal Department and NYSIF's Legal Collections Department were not subjected to discriminatory or retaliatory practices, and that the individual defendants had authority to recommend the plaintiff for promotion. Id. ¶¶ 21, 26, 31, 36. The plaintiff has sued each individual defendant in the defendant's personal capacity for money damages and in the defendant's official capacity for injunctive relief. Id. ¶¶ 23, 28, 33, 38.

On April 20, 2023, the plaintiff learned from an email from McKay, the plaintiff's supervisor, that McKay would be retiring from NYSIF and that Totaro, another attorney in the Legal Collections Department, would replace McKay, effective April 27, 2023. Id. ¶¶ 57-58. According to the plaintiff, the Director of Legal Collections position was never posted, and Totaro was selected without an interview process—in violation of the policies of NYSIF and the State of New York. Id. ¶¶ 66-67. Totaro, a younger white male, was allegedly less experienced and

3

less qualified than the plaintiff. See id. ¶¶ 59-65. The plaintiff alleges that: Totaro did not join the Legal Collections Department ("Department") until around 2012, long after the plaintiff first joined the Department; when Totaro joined the Department, the plaintiff was one of the attorneys who trained Totaro on legal collection procedures; and since 2021, Totaro has continued to ask the plaintiff questions and otherwise seek guidance from the plaintiff. See id. ¶¶ 62-65, 102.

The Director of Legal Collections ("Director") position is the "highest" and "most prestigious" position in the Department. Id. ¶¶ 74-75. The position's benefits include promotion to a "Grade 30 Supervising Attorney position" and a salary increase of about $30,000 per year. Id. ¶ 76. At the time of McKay's retirement, the plaintiff held a Grade 28 position with NYSIF. Id. ¶ 72.

On April 24, 2023, the plaintiff and McKay discussed Totaro's appointment. Id. ¶¶ 68-69. During this conversation, McKay allegedly told the plaintiff that Totaro had "made a pitch" to Wertheim and Fiedler, and that Wertheim, Fiedler, and McKay decided that Totaro should replace McKay as Director. Id. ¶¶ 69-70. The plaintiff alleges that McKay also inquired about "how many more years [the plaintiff] intended to remain at NYSIF," to which the plaintiff responded, "between three and

4

five years." Id. ¶ 71. According to the plaintiff, McKay then stated that Totaro was selected because Totaro was "younger and would be there far longer." Id. At that point, the plaintiff was eligible to retire, while Totaro, who was at least 20 years younger, was not. Id. ¶¶ 73, 78. The plaintiff claims that the decision to promote Totaro instead of the plaintiff is a "clear indication of unlawful age discrimination." Id. ¶ 80.

In May 2023, the plaintiff emailed Wertheim and Fiedler, asking why the Director position was never posted. Id. ¶ 82. Fiedler then met with the plaintiff in person. Id. ¶¶ 84-85. The plaintiff alleges that Fiedler claimed that Totaro had been selected based on McKay's recommendation. Id. ¶ 85. Fiedler allegedly also claimed that the plaintiff was "not . . . reachable on the civil service list" because there were two other attorneys in the Department who scored higher in the promotional examination for that position, and the plaintiff needed to be promoted first to the title of Supervising Attorney. Id. ¶ 86.

The plaintiff alleges that this explanation was false and pretextual. Id. ¶ 87. According to the plaintiff, he did not need to be promoted first to Supervising Attorney before being made Director. Id. In fact, the plaintiff had interviewed previously for the Director position in 2018, the last time the

5

position was vacant; McKay was selected for the role instead. Id. ¶¶ 88-89.

The plaintiff further alleges that NYSIF has a history and pattern of failing to promote Black employees and employees of Nigerian national origin to leadership positions—for example, the plaintiff alleges that, since 2002, no Black employee has been selected as Director. Id. ¶¶ 93-95. Instead, since the plaintiff's employment at NYSIF began in 2002, the plaintiff has allegedly been supervised by six white Directors. Id. ¶ 93.

**B.**

On May 29, 2023, the plaintiff filed a complaint with the New York State Division of Human Rights ("DHR"), alleging discrimination based on race, color, and age.[2] Id. ¶ 96. On August 30, 2023, NYSIF submitted a Position Statement responding to the DHR complaint, asserting that the selection of Totaro as Director was "not a promotional appointment but rather the filling of a functional role," which is why the position was not posted. Id. ¶ 97. On September 11, 2023, the plaintiff submitted a rebuttal to NYSIF's Position Statement. Id. ¶ 100. On April 3, 2024, at the plaintiff's request, the DHR complaint was dismissed for administrative convenience. Id. ¶ 101.

---

[2] The plaintiff's DHR complaint did not expressly allege national origin discrimination. Am. Compl. ¶ 96.

The plaintiff claims that the defendants have retaliated against him after he filed the DHR complaint. Id. ¶ 103. According to the plaintiff, Totaro has directed "threats, harassment, unwarranted criticism and excessive scrutiny" at him that have not been leveled at similarly situated employees. Id. ¶ 105. For example, the plaintiff alleges that, on March 8, 2024, Totaro physically threatened the plaintiff when the plaintiff complained to Totaro about an incident of unwarranted criticism and excessive scrutiny. Id. ¶ 106. Four days later, the plaintiff allegedly reported Totaro's threat to NYSIF and Fiedler, and requested a transfer to another NYSIF department. Id. ¶¶ 106-07. The plaintiff alleges that Wertheim, Fiedler, and NYSIF "condoned" Totaro's behavior and failed to address the plaintiff's complaints or transfer request for months. See id. ¶¶ 109-11. Finally, in late May 2024, the plaintiff was transferred to the Litigation Division. Id. ¶ 111.

In March 2024, shortly after he reported Totaro's alleged physical threat, the plaintiff interviewed with Wertheim and others for a promotion to a Supervising Attorney position in NYSIF's Appeals Division. Id. ¶ 112. The plaintiff alleges that he was well qualified for the position. Id. ¶ 113. However, the plaintiff was passed over for the role in favor of Rosanne Nichols, an allegedly younger, less experienced Black female of non-Nigerian national origin. Id. ¶¶ 113-15. Although Nichols

scored higher than the plaintiff on the promotion examination, the plaintiff alleges that his "history of excellent performance handling appeals" rendered him more qualified than Nichols for the position. Id. ¶¶ 116-18. The plaintiff alleges that the decision to deny him the promotion to Supervising Attorney in the Appeals Division was retaliation for his discrimination complaint and also further evidence of the defendants' discrimination based on age and national origin. Id. ¶¶ 120-22.

The plaintiff has raised claims alleging discrimination based on age, race, national origin, and color, as well as retaliation. The plaintiff seeks compensatory and punitive damages, and injunctive relief restraining the defendants from engaging in further retaliation and discrimination against him. See id. ¶¶ 123-30, 178.

## II.

To prevail against a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).[3] In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107,

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in

bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When presented with a motion to dismiss a claim under both Rule 12(b)(1) and Rule 12(b)(6), the Court should consider the jurisdictional challenge first. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

### III.

### A. ADEA (Count I)

In Count I, the plaintiff has sued Wertheim and Fiedler in their official capacities for injunctive relief, alleging that Wertheim and Fiedler failed to promote the plaintiff to the Director of Legal Collections position because of the plaintiff's age, in violation of the ADEA. See Am. Compl. ¶¶ 131–44.[4] In seeking to dismiss the plaintiff's ADEA claims, the defendants argue that (1) the Eleventh Amendment bars the plaintiff's claims; and (2) the plaintiff has failed to allege that his age was the but-for cause of any alleged injury.

---

[4] The plaintiff has not sued McKay for injunctive relief because McKay is retired and no longer works at NYSIF, thus rendering any potential equitable relief ordered against McKay futile. Am. Compl. at 16 n.1.

## 1. Sovereign Immunity

The defendants have moved to dismiss the ADEA claims for
lack of subject-matter jurisdiction, contending that the
Eleventh Amendment bars the plaintiff's claims and that the Ex
parte Young exception to sovereign immunity does not apply.

"[T]he ultimate guarantee of the Eleventh Amendment is that
nonconsenting States may not be sued by private individuals in
federal court." Bd. of Trustees of Univ. of Ala. v. Garrett, 531
U.S. 356, 363 (2001). This immunity extends to agencies and
departments of a state, as well as to state officials "when the
state is the real, substantial party in interest." Pennhurst
State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-02 (1984).
Although Congress may, pursuant to its authority under § 5 of
the Fourteenth Amendment, abrogate the states' Eleventh
Amendment immunity, the Supreme Court has held that, "in the
ADEA, Congress did not validly abrogate the States' sovereign
immunity to suits by private individuals." Kimel v. Fla. Bd. of
Regents, 528 U.S. 62, 80, 91-92 (2000).

The plaintiff does not dispute that Congress did not
validly abrogate the states' immunity in the ADEA. Rather, the
plaintiff argues that the narrow exception to immunity set forth
in Ex parte Young, 209 U.S. 123, 159-60 (1908), applies to his
ADEA claims. Ex parte Young held that the Eleventh Amendment
does not prohibit suits for prospective injunctive relief

11

against state officials acting in violation of federal law. See id.

The plaintiff seeks prospective injunctive relief—directing Wertheim and Fiedler to cease their allegedly ongoing, discriminatory promotion practices and to promote the plaintiff to the positions that he would have occupied but for their alleged discriminatory treatment. Am. Compl. ¶¶ 142-43, 178(c)-(d); see also id. ¶ 136 ("Okafor is entitled to injunctive and equitable relief, including but not limited to promotion to the Director of Legal Collections position."). The plaintiff also alleges that Wertheim and Fiedler have the authority to promote him, and that the plaintiff is still employed by NYSIF and intends to apply for promotions in the future. Id. ¶¶ 22, 27, 125, 141. The plaintiff's ADEA claims therefore fall comfortably within the Ex parte Young exception to Eleventh Amendment immunity. See, e.g., Doran v. N.Y. State Dep't of Health Off. of Medicaid Inspector Gen., No. 15-cv-7217, 2017 WL 836027, at *9 (S.D.N.Y. Mar. 2, 2017) (finding Ex parte Young applicable where the plaintiff sought injunctive relief—in the form of a promotion—against a state official for an alleged ADEA violation); Schwartz v. York Coll., No. 06-cv-6754, 2009 WL 3259379, at *3 (E.D.N.Y. Mar. 31, 2009) (observing, on a motion to dismiss, that the plaintiff's ADEA claim for prospective

injunctive relief against a state official defendant in the
defendant's official capacity was "viable").

The defendants complain that the plaintiff's request for
prospective injunctive relief is too vague, conclusory, and
contradictory for Ex parte Young to apply. The plaintiff
requests that he be "place[d] . . . in the position he would
have occupied" but for the defendants' purportedly
discriminatory conduct, Am. Compl. ¶ 178(d), which the
defendants contend is insufficiently specific. Additionally,
according to the defendants, the plaintiff alleges that he was
unlawfully denied promotion to the Director of Legal Collections
job and the Appeals Division Supervising Attorney job, but he
does not identify which of these two positions he now seeks.

However, the defendants' argument misses the mark. The
defendants rely on cases which found requests for injunctive
relief too conclusory to invoke the Ex parte Young exception,
but those cases are distinguishable. For example, in Falcon v.
City Univ. of New York, the court found Ex parte Young
inapplicable where "[t]he only reference to any kind of
injunctive relief is a single mention of the phrase alongside
every other form of damages remotely available." No. 15-cv-3421,
2016 WL 3920223, at *9 (E.D.N.Y. July 15, 2016). By comparison,
the plaintiff in this case requests injunctive relief
restraining Wertheim and Fiedler from engaging in future

13

discriminatory conduct and directing them to "promot[e] Okafor for the positions that he has applied for and for future positions." Am. Compl. ¶ 143. These requests are far from conclusory, especially when read in conjunction with the allegations that the plaintiff "will apply for future positions and promotions" and that Wertheim and Fiedler "have not ceased their ongoing discriminatory promotion practices of not promoting qualified employees over age 40." Id. ¶¶ 141-44.

Insofar as the defendants claim that the plaintiff must request injunctive relief promoting him to a single position to the exclusion of all other potential positions, that contention is also without merit. The defendants cite no cases propounding such an exacting standard. In any event, the plaintiff's ADEA claims focus on the Director of Legal Collections position, not the Appeals Division Supervising Attorney position. See id. ¶¶ 57-80, 131-44.

Accordingly, Eleventh Amendment immunity does not preclude the plaintiff's ADEA claims for injunctive relief against Wertheim and Fiedler. The defendants' motion to dismiss Count I pursuant to Rule 12(b)(1) is therefore **denied.**

### 2. Failure to State a Claim

On the merits, Wertheim and Fiedler argue that the plaintiff has failed to allege plausibly that his age was the

14

but-for cause of the defendants' adverse action–namely, their failure to promote him to Director of Legal Collections.[5]

Under the ADEA, which protects individuals who are at least 40 years old, 29 U.S.C. § 631(a), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," id. § 623(a)(1) (emphasis added). Therefore, to establish a discrimination claim under the ADEA, a plaintiff must ultimately "prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). Hence, on a motion to dismiss, an ADEA plaintiff must plausibly allege that the adverse employment action would not have occurred "but for his age." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 303 (2d Cir. 2021); see also Marcus v. Leviton Mfg. Co., Inc., 661 F. App'x 29, 32 (2d Cir. 2016) (summary order) ("A plaintiff must plead facts that give plausible support to a minimal inference of the requisite discriminatory causality.").

The defendants contend that the plaintiff alleges that his rank and promotional examination score, not his age, were the

---

[5] The defendants also present arguments regarding the Appeals Division Supervising Attorney job. However, as noted above, the plaintiff's ADEA-related allegations principally pertain to the Director of Legal Collections position, and therefore the Court addresses only the Director role in assessing whether the plaintiff has stated a plausible ADEA claim.

but-for cause of the defendants' failure to promote him. The defendants point to the plaintiff's allegations that, on May 5, 2023, Fiedler told the plaintiff that the plaintiff was not selected for the Director position "because [the plaintiff] would have needed to be promoted to the position of Supervising Attorney before being made Director," and because the plaintiff "would not have been reachable on the civil service list since there were two other attorneys in his department who scored higher in the promotional examination." Am. Compl. ¶ 86. According to the defendants, the plausible inference to be drawn from these allegations is that the defendants decided not to promote the plaintiff because of exam scores and civil service title-related issues, rather than age discrimination.

However, the defendants fail to address the plaintiff's allegations that these proffered reasons for the promotion decision were pretextual. In particular, the plaintiff alleges that he had previously interviewed and been considered for the Director position while holding his current title—Senior Attorney—and therefore his civil service title could not have been a genuine obstacle to his being considered for the role again. See id. ¶¶ 86-88.

The defendants also overlook the plaintiff's allegations that McKay expressly told the plaintiff that the plaintiff's age was the reason that the plaintiff was denied the promotion.

16

According to the plaintiff, when the plaintiff asked McKay how and why Totaro had been promoted over the plaintiff, McKay asked the plaintiff how much longer the plaintiff intended to remain at NYSIF. Id. ¶ 71. The plaintiff alleges that, after the plaintiff responded, "between three and five years," McKay told the plaintiff that Wertheim and Fiedler promoted Totaro because Wertheim and Fiedler "wanted someone in the position who is younger and would be there far longer." Id. The plaintiff has also supplied specific factual allegations that Totaro was less qualified than the plaintiff for the Director position—and over twenty years younger than the plaintiff. See id. ¶¶ 35, 59-65. Furthermore, unlike the plaintiff, Totaro was then ineligible to retire. Id. ¶ 78. Considered together, these allegations are "plainly sufficient to give plausible support to a minimal inference" that the plaintiff was passed over for a promotion because of his age. Downey v. Adloox Inc., 238 F. Supp. 3d 514, 519 (S.D.N.Y. 2017).

In arguing that the plaintiff has failed to allege but-for causation, the defendants rely on inapposite cases. In those cases, the plaintiffs failed to provide specific allegations suggesting that the individuals chosen to fill a position were less qualified than the plaintiffs, or offered conclusory, generalized assertions—wholly devoid of supporting factual detail—that the plaintiffs were passed over for a promotion

because of their age. See, e.g., Ninying v. N.Y.C. Fire Dep't,
807 F. App'x 112, 114 (2d Cir. 2020) (summary order) (declining
to credit the plaintiff's conclusory assertion that "he was
passed over for a promotion because of his age" where the
plaintiff failed to allege any facts to support that assertion).
By contrast, in this case, the plaintiff alleges that McKay
specifically told the plaintiff that Totaro was selected because
Totaro was "younger" and would be in the Director position "far
longer." Am. Compl. ¶ 71. The plaintiff has also provided
specific factual allegations supporting his assertions that he
was more experienced and qualified for the position than Totaro:
Totaro did not begin working in Legal Collections until around
2012, ten years after the plaintiff joined the Department, id.
¶ 62; the plaintiff trained Totaro on legal collection
procedures, id. ¶ 63; and the plaintiff answered Totaro's
questions about work procedures, continuing to do so even after
Totaro was promoted to the Director position, id. ¶¶ 63-65.[6]

---

[6] In their reply brief, the defendants argue that the fact that Totaro, who is
allegedly in his forties, is himself old enough to fall within the scope of
ADEA protection undercuts the inference that the plaintiff was denied a
promotion because of his age. It is true that, in some cases, this fact may
weaken the inference of discrimination. See, e.g., Santana v. Mt. Vernon City
Sch. Dist./Bd. of Educ., No. 20-cv-3212, 2023 WL 2876653, at *11 (S.D.N.Y.
Apr. 7, 2023). However, Totaro's membership in the protected class is not a
basis to dismiss the ADEA claims in this case because the plaintiff has
alleged that Totaro was substantially younger than the plaintiff and that the
defendants made explicit statements about the plaintiff's age in direct
connection with their decision to promote Totaro. See O'Connor v. Consol.
Coin Caterers Corp., 517 U.S. 308, 312 (1996) ("The fact that one person in
the protected class has lost out to another person in the protected class is
. . . irrelevant, so long as he has lost out because of his age."). As

The defendants' motion to dismiss the plaintiff's ADEA
claims in Count I pursuant to Rule 12(b)(6) is therefore **denied.**

## B. Title VII Claims (Count II)

In Count II, the plaintiff alleges that NYSIF discriminated
against him based on his race, color, and national origin, in
violation of Title VII. See Am. Compl. ¶¶ 145-50. The plaintiff,
who is Black and Nigerian, claims that NYSIF decided not to
promote him to the Director position for discriminatory reasons.

Title VII prohibits employment discrimination based on
"race, color, religion, sex, or national origin." 42 U.S.C.
§ 2000e-2(a). To survive a motion to dismiss in a Title VII
discrimination case, the plaintiff "must plausibly allege that
(1) the employer took adverse action against him, and (2) his
race, color, religion, sex, or national origin was a motivating
factor in the employment decision." Vega v. Hempstead Union Free
Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). In this case,
because the defendants do not dispute that the denial of a
promotion is an adverse employment action, only the second
element is at issue.

The plaintiff can plead that element by alleging "facts
that directly show discrimination or facts that indirectly show
discrimination by giving rise to a plausible inference of

---

explained above, the plaintiff's allegations are more than sufficient to
support a plausible inference of but-for causation.

discrimination." Id. At this stage, the plaintiff's burden to show discriminatory intent is "minimal." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). The allegations "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; they "need only give plausible support to a minimal inference of discriminatory motivation." Id.

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." Id. at 312. In the context of a failure-to-promote claim, an inference of discrimination can be drawn if "the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff." Gordon v. City of New York, No. 14-cv-6115, 2015 WL 3473500, at *7 (S.D.N.Y. June 2, 2015) (citing Yu v. N.Y.C. Hous. Dev. Corp., 494 F. App'x 122, 125 n.4 (2d Cir. 2012) (summary order)). To identify proper comparators, the plaintiff "must show that [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). The

employees' circumstances need only be "reasonably close," not "identical." Id. at 40.

In this case, the defendants have moved to dismiss the plaintiff's Title VII claims pursuant to Rule 12(b)(6), arguing that the plaintiff has failed to allege facts that directly show discrimination or facts that indirectly establish discrimination. The defendants are correct that McKay's alleged comments to the plaintiff about the decision to promote Totaro do not constitute direct evidence of discriminatory intent based on race, color, or national origin. McKay allegedly told the plaintiff that leadership wanted "someone in the position who is younger and would be there far longer." Am. Compl. ¶ 71 (emphasis added). McKay's statement reflects the defendants' purported consideration of the plaintiff's age, not race, color, or national origin, in deciding to promote Totaro.

However, the plaintiff has provided specific facts to support his allegation that he was passed over in favor of a less qualified applicant who was not in the protected class. The plaintiff plausibly alleges that Totaro, a white, non-Nigerian employee, was less qualified than the plaintiff to be the Director. For example, the plaintiff alleges that Totaro joined the Legal Collections Department ten years after the plaintiff started working there, that the plaintiff trained Totaro when Totaro first began working in the Legal Collections Department,

and that Totaro asked—and has continued to ask—the plaintiff for assistance and guidance on the Department's procedures throughout the years. See id. ¶¶ 61-65.[7]

Courts have found allegations that a position ultimately went to a less qualified employee not in the protected group sufficient to establish an inference of discrimination. See, e.g., Gordon, 2015 WL 3473500, at *7 (denying a motion to dismiss a Title VII failure-to-promote claim where the plaintiff alleged that similarly qualified non-African American attorneys were promoted); Allen v. N.Y.C. Dep't of Env't Prot., 51 F. Supp. 3d 504, 512-13 (S.D.N.Y. 2014) (finding allegations that the positions for which the Black, Jamaican plaintiff was rejected were ultimately filled by non-Black and non-Jamaican individuals who were less qualified than or similarly qualified as the plaintiff to be sufficient to give rise to an inference of discrimination).[8]

---

[7] Insofar as the defendants contend that Totaro and the plaintiff were not similarly situated because they had different civil service titles, that argument is unavailing. To be a proper comparator, the circumstances of an employee outside the plaintiff's protected class need only be "reasonably close" to those of the plaintiff, not "identical." Graham, 230 F.3d at 40. For the reasons stated above, the plaintiff has presented allegations showing that the plaintiff was more qualified for the Director position than Totaro, notwithstanding Totaro's different civil service title.

[8] As for discriminatory intent based on race, the defendants argue that any inference of such intent is undermined by the plaintiff's admission that a Black employee—Rosanne Nichols—was selected for the Appeals Division Supervisory Attorney position that the plaintiff later applied for. Defs. Reply Br. at 3, ECF No. 33. Although that detail may be favorable evidence for the defendants in future stages of the litigation, it does not change the fact that the plaintiff's allegations, for purposes of this motion to dismiss, plausibly support an inference of discriminatory intent with respect to NYSIF's decision to promote Totaro to Director of Legal Collections. Even

Accordingly, the plaintiff has stated a Title VII claim against NYSIF. The motion to dismiss Count II pursuant to Rule 12(b)(6) is **denied.**

### C. 42 U.S.C. §§ 1981 and 1983 (Count III)

In Count III, the plaintiff brings claims pursuant to 42 U.S.C. §§ 1981 and 1983 against Wertheim, Fiedler, and McKay, alleging that the defendants denied him a promotion based on his race, color, and national origin in violation of the Equal Protection Clause. See Am. Compl. ¶¶ 151-56. The defendants contend that the plaintiff has failed to state a claim under either statute.

### 1. Section 1981

The defendants argue—and the plaintiff concedes—that § 1981 provides no private right of action against state actors. See Pltf. Opp. at 11, ECF No. 32.[9] Indeed, the Supreme Court has squarely held that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); see also

---

considering the promotion of Rosanne Nichols, there is at least an issue of fact as to whether NYSIF acted with a racially discriminatory motivation in promoting Totaro rather than the plaintiff.

[9] Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Duplan v. City of New York, 888 F.3d 612, 620–21 (2d Cir. 2018)
(concluding that there was no indication that Congress's 1991
amendments to § 1981 were intended to overrule Jett, and
therefore "§ 1981 does not provide a separate private right of
action against state actors"). Courts in this District have
interpreted Jett to apply to individuals sued in their
individual capacities who are state actors. See, e.g., Gonzalez
v. City of New York, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019);
Whaley v. City Univ. of New York, 555 F. Supp. 2d 381, 400–01
(S.D.N.Y. 2008). In opposition, the plaintiff does not dispute
that Jett applies or that the individual defendants in this case
are state actors; instead, the plaintiff contends that "these
claims should proceed as § 1983 claims." Pltf. Opp. at 11.
Therefore, the motion to dismiss the plaintiff's § 1981 claims
is **granted.**

## 2. Section 1983

The Fourteenth Amendment gives public employees "the right
to be free from discrimination." Vega, 801 F.3d at 87.
Consequently, public employees who have experienced employment
discrimination may sue pursuant to § 1983 any responsible
persons acting under color of state law. See id. To state a
claim under § 1983, a plaintiff must allege: "(1) the violation
of a right secured by the Constitution and laws of the United

States, and (2) the alleged deprivation was committed by a person acting under color of state law." Id. at 87–88.

In this case, the parties do not dispute that Wertheim, Fiedler, and McKay, all employees of a State agency, acted under color of state law in allegedly depriving the plaintiff of equal employment opportunity. Therefore, the question is whether the plaintiff has alleged that the defendants violated his right to equal protection guaranteed by the Fourteenth Amendment.

To state a claim for employment discrimination under § 1983, a plaintiff must establish that "the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action." Naumovski v. Norris, 934 F.3d 200, 222 (2d Cir. 2019). Unlike claims brought under Title VII, an allegation that discriminatory intent was merely a "motivating factor" of the defendants' conduct does not meet the pleading standard required by § 1983. Id. at 213–14.

In this case, the Amended Complaint fails to allege plausibly that the plaintiff would have been promoted but for

the defendants' discrimination against the plaintiff based on race, color, or national origin.[10]

Rather, the Amended Complaint alleges that age, not race, color, or national origin, was the but-for cause of the defendants' decision not to promote the plaintiff. As explained above, the defendants allegedly passed over the plaintiff because of his age and the possibility of his imminent retirement. See Am. Compl. ¶ 71. The Amended Complaint also alleges that the plaintiff was eligible for retirement and Totaro was not, that the defendants were aware of this distinction, and that it factored heavily into their decision. Id. ¶¶ 71, 73, 78. The Amended Complaint contains no specific factual allegations to support the inference that the plaintiff would have been promoted but for the fact that he is Black and of Nigerian origin. See Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 69 (2d Cir. 2015) ("[W]ithout any reference to specific statements or individual circumstances that suggest discriminatory treatment, plaintiffs' [§ 1983] allegations do not support a finding that defendants acted with a

---

[10] The plaintiff does not plead age discrimination under § 1983 in the Amended Complaint. Unlike in Counts I, IV, and V, which each refer to age discrimination, Count III cites only "Race, Color and National Origin Discrimination." Am. Compl. at 17; see id. at 16, 18–19. Moreover, the portions of the plaintiff's brief pertaining to the plaintiff's § 1983 claims address alleged discrimination based on race, color, and national origin, but make no mention of age. See, e.g., Pltf. Opp. at 9 (arguing that "[p]laintiff has pled sufficient facts showing that but-for his race, color, and national origin, he would have been promoted" (emphasis added)).

discriminatory purpose."); <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987) ("[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.").

In support of his claim, the plaintiff alleges that there is a "history of failure to promote Nigerians to higher positions, such as Director positions, within NYSIF." Am. Compl. ¶ 81. Although this alleged history may support an inference that race, color, and national origin may have been "motivating factors" in the defendants' decision not to promote him, without more, it does not plausibly allege but-for causation.

The plaintiff cites inapposite cases. For example, the plaintiff relies on <u>Graham v. Long Island Rail Road</u>, but <u>Graham</u> involved the "motivating factor" standard for Title VII claims, not the "but-for" causation standard for § 1983 claims. <u>See</u> 230 F.3d at 38-39. Similarly, the portions of <u>Mandell v. County of Suffolk</u> relied upon by the plaintiff addressed the plaintiff's Title VII claim, not a § 1983 claim. 316 F.3d 368, 381-82 (2d Cir. 2003).

Accordingly, the plaintiff has failed to state a claim under § 1983. The defendants' motion to dismiss Count III pursuant to Rule 12(b)(6) is therefore **granted.**

### D. **NYSHRL and NYCHRL (Counts IV and V)**

In Count IV, the plaintiff raises two claims under the NYSHRL. First, the plaintiff claims that Wertheim, Fiedler, and McKay denied the plaintiff a promotion to Director of Legal Collections because of the plaintiff's age, race, color, and national origin. Second, the plaintiff claims that Wertheim denied the plaintiff a promotion to Supervising Attorney because of the plaintiff's national origin. See Am. Compl. ¶¶ 157–66. In Count V, the plaintiff asserts the same two claims under the NYCHRL. See id. ¶¶ 167–73.

The defendants contend that the NYCHRL claims against the individual defendants are barred by sovereign immunity; that the plaintiff cannot allege a primary violation by an "employer" as required under the NYSHRL, and therefore the aiding-and-abetting claims under the State law cannot survive; and that the plaintiff has not stated a claim under either statute.

### 1. **Sovereign Immunity**

The defendants argue that the plaintiff's NYCHRL claims are barred by the sovereign immunity of New York State, given that Wertheim, Fiedler, and McKay were acting as state employees throughout the period described in the complaint.

NYSIF's sovereign immunity is well-established. See Perry v. State Ins. Fund, 83 F. App'x 351, 353 (2d Cir. 2003) (summary order) (noting that NYSIF "is a state agency entitled to

sovereign immunity."). However, "[c]ourts appear to be divided on whether state sovereign immunity applies to lawsuits against state officials in their personal capacities for violations of the NYCHRL." Milord-Francois v. N.Y. State Off. of the Medicaid Inspector General, 635 F. Supp. 3d 308, 321 (S.D.N.Y. 2022). Where New York law is not clear, this Court is generally bound "to apply the law as interpreted by New York's intermediate appellate courts" unless "persuasive evidence" suggests that the New York Court of Appeals "would reach a different conclusion." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999). The Court's task is to predict "on a reasonable basis how the New York Court of Appeals would rule if squarely confronted with this issue." DiBella v. Hopkins, 403 F.3d 102, 111-12 (2d Cir. 2005).

In arguing that the NYCHRL claims against the individual defendants in their personal capacities are barred by sovereign immunity, the defendants rely on a decision from one of New York's intermediate appellate courts. See generally Ajoku v. N.Y. State Off. of Temp. Disability Assistance, No. 159104/18, 2020 WL 886160 (N.Y. Sup. Ct. Feb. 20, 2020), aff'd, 152 N.Y.S.3d 566 (App. Div. 2021). In Ajoku, the New York Supreme Court held that individual state employees were entitled to sovereign immunity for acts performed in their "official roles of hiring, supervising and terminating plaintiff." Id. at *4. In

affirming the decision, the Appellate Division, First Department noted that the "plaintiff [had not] identified any independent duty," separate from the NYCHRL, owed to him by the individual state employee. Ajoku v. N.Y. State Off. of Temp. & Disability Assistance, 152 N.Y.S.3d 566, 567 (App. Div. 2021). The Appellate Division relied chiefly on Morell v. Balasubramanian, which held that officers of the State retain sovereign immunity against claims that "arise[] from actions or determinations of the officer made in his or her official role and involve[] rights asserted, not against the officer individually, but solely against the State." 514 N.E.2d 1101, 1102 (N.Y. 1987).

Federal courts in this Circuit have concluded that the New York Court of Appeals would reach a different conclusion than the Ajoku court. In Feingold v. New York, the Court of Appeals for the Second Circuit concluded that the plaintiff's claim against the Department of Motor Vehicles was barred by state sovereign immunity, but proceeded to evaluate the plaintiff's claims against individual employees on the merits. See 366 F.3d 138, 149, 158-59 (2d Cir. 2004) (citing with approval a district court decision finding that "an individual may be held liable under the NYCHRL if he or she engaged in discriminatory acts"). And after a thorough analysis of this question, a court in this District concluded that the New York Court of Appeals would likely "hold that state employees who in the course of their

employment engage in conduct that violates the NYCHRL are not, by virtue of their state employment alone[,] entitled to immunity." Milord-Francois, 635 F. Supp. 3d at 324; see also id. at 322-23 (collecting other district court cases reaching the same conclusion).

Milord-Francois relies on a close analysis of Morell, the case on which the Ajoku court based its holding. See id. at 323-26; Ajoku, 152 N.Y.S.3d at 567. Departing from Ajoku, the Milord-Francois court concluded that "[t]he key under Morell is . . . whether state law imposes the duty individually on the state employee. If it does, then the fact that the employee happens to have engaged in the tortious conduct while performing a state function does not shield [the employee] from liability." Milord-Francois, 635 F. Supp. 3d at 324.

The NYCHRL explicitly imposes such an individual duty on an employee. The statute provides that it is unlawful "for an employer or an employee or agent thereof . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a) (emphasis added). Therefore, "[t]he NYCHRL itself imposes an independent duty on employees—whether they are employees of a state agency, a city agency, or a private company." Milord-Francois, 635 F. Supp. 3d at 326; see also Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 75-76 (2d Cir. 2015)

31

(considering, on the merits, claims that individual state employees violated the NYCHRL); Purdie v. City Univ. of New York, No. 13-cv-6423, 2015 WL 129552, at *6 (S.D.N.Y. Jan. 8, 2015) (holding that NYCHRL claims against individual state employees are not barred by sovereign immunity because the law "imposes upon every manager a personal duty not to aid racial discrimination").

In accordance with other courts in this Circuit, the Court is persuaded that "under New York law, a state employee is not shielded from individual liability [under the NYCHRL] based upon his or her personal violation of law even if the employee is doing the state's work." Milord-Francois, 635 F. Supp. 3d at 324. Accordingly, the NYCHRL claims against the individual defendants in Count V are not barred by sovereign immunity.

## 2. Primary Violation by an "Employer"

The defendants also argue that the plaintiff's aiding-and-abetting claims under the NYSHRL should be dismissed. The defendants contend that there is no predicate violation by a suable "employer" to which an individual's secondary liability can attach.

The NSYHRL provides two theories on which defendants can be held liable for discrimination. First, the statute provides that it is "an unlawful discriminatory practice [f]or an employer . . . to refuse to hire or employ or to bar or to discharge from

employment such individual or to discriminate against such
individual in compensation or in terms, conditions or privileges
of employment" based on, among other things, that individual's
age, race, color, or national origin. N.Y. Exec. Law § 296(1)(a)
(emphasis added). Second, the statute makes it unlawful "for any
person to aid, abet, incite, compel or coerce the doing of any
of the things forbidden under this article, or to attempt to do
so." Id. § 296(6) (emphasis added).

The first theory of liability is not viable in this case
because, as the parties agree, the individual defendants are not
"employers" under the statute. See Doe v. Bloomberg, L.P., 167
N.E.3d 454, 458 (N.Y. 2021) ("[T]he State HRL does not render
employees liable as individual employers."). The individual
defendants therefore cannot be held liable under § 296(1).

However, individual employees can be held liable for aiding
and abetting discriminatory conduct under § 296(6). See, e.g.,
Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 337–38
(S.D.N.Y. 2020). To state an aiding-and-abetting claim against
an individual, "liability must first be established as to the
employer/principal." Dewitt v. Lieberman, 48 F. Supp. 2d 280,
293 (S.D.N.Y. 1999); see also Patane v. Clark, 508 F.3d 106, 115
n.7 (2d Cir. 2007) (citing DeWitt with approval); Hicks v. IBM,
44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999) (following DeWitt).
After establishing the employer's predicate liability, the

33

plaintiff must show that the individual defendant "actually participate[d] in the conduct giving rise to a discrimination claim." Feingold, 366 F.3d at 158.

The defendants contend that Wertheim, Fiedler, and McKay cannot be liable for aiding and abetting because the would-be principal, NYSIF, is a state agency entitled to sovereign immunity. According to the defendants, without a claim against NYSIF under § 296(1), there is no predicate violation as required by § 296(6), and therefore no viable aiding-and-abetting claim against the individual defendants.

The Court of Appeals for the Second Circuit has not squarely addressed whether a state employee can be held individually liable for aiding and abetting discrimination if the individual's employer enjoys sovereign immunity. See Bonaffini v. City Univ. of New York, No. 20-cv-5118, 2021 WL 2895688, at *3 (E.D.N.Y. July 9, 2021) (noting the open question and collecting cases reaching opposite conclusions). However, the Court of Appeals has analyzed a state employee's individual liability under the NYSHRL on the merits, rather than dismissing the claim even when any claim against the state employer would have been barred by sovereign immunity. See Feingold, 366 F.3d at 149, 158. Furthermore, a recent case in this District held that an NYSIF employee could sue her individual co-workers under § 296(6), even though NYSIF itself enjoyed sovereign immunity

34

from a § 296(1) suit. <u>See</u> <u>Kent-Friedman v. N.Y. State Ins. Fund</u>,
No. 18-cv-4422, 2023 WL 6292693, at *9–10 (S.D.N.Y. Sept. 27,
2023).

The cases permitting aiding-and-abetting claims against
individual employees to move forward under these circumstances
"reflect[] the general rule that 'a procedural bar to seeking
liability against an employer does not prevent claims against an
employee in [the employee's] individual capacity.'" <u>Bonaffini</u>,
2021 WL 2895688, at *3 (quoting <u>Johnson v. Cnty. of Nassau</u>, 82
F. Supp. 3d 533, 537 (E.D.N.Y. 2015)). For this reason, many
courts in this Circuit have concluded persuasively that
"dismissal of the cause of action against the employer/principal
warrants dismissal of the derivative, aiding and abetting cause
of action only where the dismissal against the
employer/principal was <u>on the merits</u> (<u>i.e.</u> where the employer
was not found to have engaged in a discriminatory practice)."
<u>Daniels v. Wesley Gardens Corp.</u>, No. 10-cv-6336, 2011 WL
1598962, at *3 (W.D.N.Y. Apr. 27, 2011) (emphasis added); <u>see
also</u> <u>Bonaffini</u>, 2021 WL 2895688, at *3 (collecting cases). And
"[b]ecause sovereign immunity does not effect a dismissal on the
merits, it does not require a different result." <u>Bonaffini</u>, 2021
WL 2895688, at *3.

Accordingly, state employees may be liable in their
individual capacities under § 296(6) even though their employer

would enjoy sovereign immunity against claims brought under
§ 296(1). Even if sovereign immunity forecloses a claim for a
primary violation against an employer, an aiding-and-abetting
claim against an individual employee is viable if the plaintiff
can show that the employer violated § 296(1) in substance. In
other words, "a plaintiff can still prove involvement by the
employer even if the employer is procedurally dismissed from the
case (or is not brought as a defendant at all)." Johnson, 82 F.
Supp. 3d at 537.

In this case, the plaintiff has alleged that the individual
defendants' employer, NYSIF, violated § 296(1) in substance. An
employer violation of the NYSHRL can be found if the plaintiff
shows that the employer "encouraged, condoned, or approved the
discriminatory conduct of a sole employee." Id. at 536; see also
Charlier v. 21 Astor Place Condo., No. 22-cv-5903, 2024 WL
4026253, at *7 (S.D.N.Y. Sept. 3, 2024) (citing Johnson to find
a plausible employer violation of the NYSHRL where the employer
"condoned" an individual employee's discriminatory conduct);
Farmer, 473 F. Supp. 3d at 337 (holding that an individual
employee's actions can "serve as the predicate for the
employer's vicarious liability, so long as the employer's
conduct has also been found to be discriminatory under the
NYSHRL"). In this case, the Amended Complaint plausibly alleges
that NYSIF "condoned" the individual defendants' discrimination

36

by promoting a purportedly less qualified, younger, white person of non-Nigerian origin in the plaintiff's place and failing to take corrective action. <u>See</u> Am. Compl. ¶¶ 34-35, 60.

The plaintiff has also alleged that the individual defendants "actually participate[d] in the conduct giving rise to a discrimination claim." <u>Feingold</u>, 366 F.3d at 158. Wertheim, Fiedler, and McKay allegedly selected a less qualified candidate for the Director of Legal Collections position because the plaintiff was older, Black, and of Nigerian origin. <u>See</u> Am. Compl. ¶¶ 79-81.

Therefore, because the Amended Complaint alleges both NYSIF's predicate violation and the individual defendants' actual participation in discriminatory conduct, the plaintiff has presented a viable theory of aiding-and-abetting liability against Wertheim, Fiedler, and McKay under the NYSHRL and NYCHRL.

### 3. Failure to State a Claim

Next, the defendants argue that the plaintiff has failed to allege sufficient facts to connect his protected characteristics to the defendants' alleged conduct.

This argument is without merit. "A complaint that plausibly alleges each of the required elements under Title VII also properly states NYSHRL and NYCHRL claims." <u>Small v. N.Y.C. Dep't of Educ.</u>, 650 F. Supp. 3d 89, 97 (S.D.N.Y. 2023). The same is

true for age discrimination claims brought pursuant to the ADEA and the NYSHRL and NYSCHRL. See, e.g., Santiago v. ACACIA Network, Inc., 634 F. Supp. 3d 143, 157–58 (S.D.N.Y. 2022). For the reasons explained above, the plaintiff has adequately stated claims for discrimination in violation of the NYSHRL and NYCHRL against the individual defendants named in Counts IV and V. See supra sections III.A.2 & III.B.

### 4. Declaratory and Injunctive Relief

The defendants contend that this Court may not grant the plaintiff's claims for declaratory or injunctive relief under the NYSHRL or NYCHRL. The plaintiff does not dispute this point, arguing instead that such relief is available for the plaintiff's federal claims.

"It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law." Bad Frog Brewery, Inc. v. New York State Liquor Auth., 134 F.3d 87, 93 (2d Cir. 1998). Accordingly, insofar as the plaintiff is seeking declaratory or injunctive relief under the NYSHRL or NYCHRL that would compel the defendants to act, the motion to dismiss is **granted**.

However, the plaintiff has otherwise stated NYSHRL and NYCHRL claims against Wertheim, Fiedler, and McKay. Therefore, in all other respects, the motion to dismiss Counts IV and V is **denied**.

### E. Retaliation (Count VI)

In Count VI, the plaintiff claims that Wertheim, Fiedler, Totaro, and NYSIF retaliated against the plaintiff for his formal complaint regarding discriminatory practices, in violation of the ADEA, Title VII, § 1983,[11] the NYSHRL, and the NYCHRL.[12] The defendants argue that the Court should dismiss these claims because the plaintiff has failed to allege a materially adverse employer action that was causally connected to the plaintiff's protected activity.

The Title VII framework for retaliation claims also applies to the ADEA. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). Under this framework, the plaintiff must plausibly allege: (1) "participation in a protected activity"; (2) "that the defendant knew of the protected activity"; (3) "an adverse employment action"; and (4) "a causal connection between the protected activity and the adverse employment action." Edelman v. NYU Langone Health Sys., 141 F.4th 28, 45 (2d Cir. 2025).

---

[11] As explained above in section III.C.I, the Amended Complaint attempts to bring claims, including retaliation claims, under 42 U.S.C. § 1981. In subsequent filings, the plaintiff acknowledged that those claims are properly pleaded under 42 U.S.C. § 1983. "[R]etaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983." Vega, 801 F.3d at 80.

[12] The defendants do not argue that the Eleventh Amendment bars the plaintiff's claims for retaliation against any of the defendants. Therefore, the Court does not address that issue in resolving this motion. See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998) (observing that "unless the State raises the matter [of Eleventh Amendment immunity], a court can ignore it"); see also Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 515 n.19 (1982).

Claims brought under § 1983 are analyzed under the same principles as well, so long as the plaintiff first establishes that the defendant was "act[ing] under color of state law." Vega, 801 F.3d at 91.

The NYSHRL and NYCHRL share a standard that is "more liberal" than the federal standard. Edelman, 141 F.4th at 45. Under the State and City standard, the plaintiff "must demonstrate that [the plaintiff] took an action opposing [the plaintiff's] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Id.

Because the State and City "claims are to be reviewed more liberally than Title VII claims," the Court will first consider the claims under the Title VII standard. Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 71 (2d Cir. 2016) (summary order). If the retaliation claims survive under the Title VII standard, that finding "dictates the same result under the NYCHRL [and NYSHRL]." Farmer, 473 F. Supp. 3d at 334.

### 1. Knowledge of Protected Activity

The parties generally agree that the plaintiff has pleaded the first two elements of a retaliation claim under the federal standard. However, with respect to the first element—participation in a protected activity—although the defendants acknowledge that filing a DHR complaint is protected activity,

40

the defendants contend that the plaintiff's alleged subsequent
activity was not protected.

Title VII prohibits an employer from "discriminat[ing]
against any of his employees . . . because he has opposed any
practice made an unlawful employment practice, . . . or because
he has . . . participated in any manner in an investigation,
proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-
3(a). Under Title VII's opposition clause, an employee's
complaint or objection to a supervisor about discriminatory
conduct can constitute protected activity. See Reed v. A.W.
Lawrence & Co., Inc., 95 F.3d 1170, 1178-79 (2d Cir. 1996).
Meanwhile, the participation clause of Title VII is "expansive,"
encompassing nearly any action an individual takes in connection
with a formal Title VII proceeding. Deravin v. Kerik, 335 F.3d
195, 203 (2d Cir. 2003); see, e.g., Jute v. Hamilton Sundstrand
Corp., 420 F.3d 166, 173-75 (2d Cir. 2005) (holding that a
plaintiff "participated" in a qualifying proceeding by offering
to testify in another individual's discrimination lawsuit, even
though the plaintiff ultimately did not testify).

In this case, the plaintiff has alleged that he engaged in
protected activity and that the defendants knew of this
protected activity. On May 29, 2023, the plaintiff filed a
discrimination complaint based on race, color, and age with DHR.
Am. Compl. ¶ 96. Filing such a complaint constitutes

participation in a protected activity. See Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024); see also Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 239 (N.D.N.Y. 2010) (noting that formal DHR complaints "undisputably constitute protected activity"). The plaintiff has also alleged that the defendants knew of the protected activity: the defendants responded to the DHR complaint on August 30, 2023. Am. Compl. ¶ 97.

The Amended Complaint identifies three additional instances in which the plaintiff allegedly engaged in protective activity. The plaintiff allegedly "participated" in his DHR proceeding on September 11, 2023, by filing a rebuttal to NYSIF's position statement, see id. ¶ 100, and on April 3, 2024, when the DHR complaint was dismissed on his request, see id. ¶ 101. See Sanders v. Madison Square Garden, L.P., No. 06-cv-589, 2007 WL 2254698, at *18 (S.D.N.Y. Aug. 6, 2007), withdrawn in other part, 525 F. Supp. 2d 364 (S.D.N.Y. 2007) ("[T]he expansive protection provided by the participation clause protects any conduct of the participant."). The plaintiff has also alleged that, on March 8, 2024, the plaintiff "complained to Totaro about an incident of unwarranted criticism and excessive scrutiny." Am. Compl. ¶ 106. This informal complaint constitutes protected activity because, as alleged, it was founded in the plaintiff's opposition to Totaro's "unwarranted criticism and

execssive scrutiny not otherwise leveled at other employees similarly situated to [the plaintiff]." Id. ¶ 105.[13]

## 2. Adverse Employment Actions

The parties dispute whether the plaintiff has alleged the third element of a retaliation claim under the federal standard, which requires an "adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010). The defendants appear to agree that Totaro's alleged physical threat against the plaintiff was an adverse action. See Am. Compl. ¶ 106; Defs. Br. at 20, ECF No. 28. However, the defendants argue that the other alleged retaliatory actions were not materially adverse.

The federal anti-retaliation laws cover "employer actions that would have been materially adverse to a reasonable employee or job applicant." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). "The test of whether [an action] is a materially adverse employment [action] is whether its nature is such that it would likely, in the relevant context, dissuade a reasonable employee from complaining about discrimination." Moll v. Telesector Res. Grp., Inc., 94 F.4th

---

[13] In opposing this motion, the plaintiff lists additional allegations about his participation in this lawsuit—namely, his October 31, 2023 notification to NYSIF and DHR that he intended to file this lawsuit, and DHR's December 12, 2023 notification that it was contemplating dismissing the DHR complaint so that the plaintiff could pursue his remedies in court. See Pltf. Opp. at 20–21. However, because those two events are not alleged in the Amended Complaint, the Court does not consider them for the purpose of this Memorandum Opinion and Order.

218, 244 (2d Cir. 2024). The test "separate[s] significant from trivial harms," the latter of which include "petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68.

The plaintiff has alleged three "materially adverse" actions: Totaro's physical threat, NYSIF's delay in transferring the plaintiff to another department, and the decision not to promote the plaintiff to Supervising Attorney. The Court will discuss each in turn.

### a. Physical Threat

First, it is plain that Totaro's alleged physical threat is materially adverse. On March 8, 2024, the plaintiff "complained to Totaro about an incident of unwarranted criticism and excessive scrutiny." Am. Compl. ¶ 106. Totaro, apparently in response to complaint, "physically threatened [the plaintiff]." Id. An action is materially adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 57. A reasonable worker would think twice about claiming discrimination if that worker expected to be subject to physical threats as a result.

The Amended Complaint alleges only that Totaro was involved in this incident. See Am. Compl. ¶ 106. Accordingly, the motion to dismiss is **granted** with respect to the retaliation claims

brought against Fiedler and Wertheim based on the alleged physical threat.

### b. Delay in Approving Transfer

Second, the defendants' alleged delay in transferring the plaintiff to another department is a plausible materially adverse action. See Banks v. Gen. Motors, LLC, 81 F.4th 242, 276–77 (2d Cir. 2023) (concluding that a reasonable jury could find that the plaintiff's employer retaliated against the plaintiff "by requiring her to undergo an additional psychiatric evaluation that delayed her return to work, which deviated from [the employer's] usual practice for employees returning from leave").

In this case, the plaintiff allegedly requested a transfer "for his safety" on March 12, 2024, four days after Totaro's physical threat and while the plaintiff's complaint was still pending before DHR. Am. Compl. ¶ 108. The transfer was not approved for over two months, on May 21, and not effected until May 28. Id. ¶ 111. This delay, which forced the plaintiff to remain in an allegedly unsafe and discriminatory work environment for two months longer, could "dissuade a reasonable employee from making a complaint of discrimination." Carr v. N.Y.C. Transit Auth., 76 F.4th 172, 181 (2d Cir. 2023).

### c. Denial of Promotion to Supervising Attorney

Third, Wertheim's and NYSIF's decision to pass over the plaintiff for the Appeals Division Supervising Attorney position was materially adverse. According to the plaintiff, Wertheim and others interviewed him for the position of Supervising Attorney on March 15, 2024, and the plaintiff learned on or around April 5, 2024, that the position had gone to someone else. Am. Compl. ¶¶ 112-13. "[I]t cannot be doubted that a denial of promotion is the sort of adverse action that could dissuade a reasonable worker from making or supporting a charge of discrimination." Hinton v. City Coll. of New York, No. 05-cv-8951, 2008 WL 591802, at *25 (S.D.N.Y. Feb. 29, 2008). Therefore, the denial of the promotion to Supervising Attorney was a materially adverse action.[14]

Because the three actions alleged—Totaro's threat, the defendants' delay in transferring the plaintiff, and Wertheim's and NYSIF's decision not to promote the plaintiff to Supervisory Attorney—are sufficiently adverse to state a claim under the Title VII standard, they are also adequate under the NYSHRL and NYCHRL standards.

---

[14] The Amended Complaint alleges only that Wertheim and NYSIF were responsible for failing to promote the plaintiff to the Supervising Attorney position. See id. ¶¶ 112-22. For that reason, this event would not be a basis for retaliation claims against Fiedler and Totaro.

### 3. Causal Connection

The fourth and final element of a retaliation claim is a causal connection between a defendant's materially adverse action and the plaintiff's protected activity. See Hicks, 593 F.3d at 164. In this case, the defendants argue that the plaintiff has failed to allege a causal connection between his protected activity and any of the three adverse actions discussed above.

Under the federal standard, "retaliation claims must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013). A plaintiff can establish but-for causation in either of two ways: directly, with evidence of "retaliatory animus," or indirectly, by showing that the plaintiff's "protected activity was followed by" the defendants' adverse action. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

Because the Amended Complaint does not provide any direct evidence of retaliatory animus, the question is whether a causal connection is established indirectly based on the temporal proximity between the plaintiff's protected activity and the defendants' alleged retaliatory actions.

47

Temporal proximity between an employee's protected activity and an employer's adverse action provides "sufficient evidence of causality" only when that proximity is "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). There is no "bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). Under some circumstances, even "five months is not too long to find the causal relationship." Id.

For the purpose of establishing a causal connection, temporal proximity is measured from the plaintiff's protected activity to the defendant's adverse action. The instances of protected activity most relevant to the plaintiff's claims are the plaintiff's March 8, 2024 complaint to Totaro about "an incident of unwarranted criticism and excessive scrutiny," and the April 3, 2024 dismissal of the plaintiff's DHR complaint at the plaintiff's request. Am. Compl. ¶¶ 101, 106.

### a. Physical Threat

There is plainly a plausible inference of a causal connection between the plaintiff's protected activity and Totaro's alleged physical threat. The Amended Complaint alleges that the Totaro physically threatened the plaintiff "when [the plaintiff] complained to Totaro about an incident of unwarranted criticism and excessive scrutiny." Id. ¶ 106 (emphasis added).

48

### b. Delay in Approving Transfer

Similarly, the timing of the defendants' delay in transferring the plaintiff to another department supports the inference of a causal connection between the defendants' action and the plaintiff's protected activity. The plaintiff's DHR complaint was dismissed for administrative convenience on the plaintiff's request on April 3, 2024. See id. ¶ 101. This action constitutes "participation" in the plaintiff's proceedings under Title VII. At that time, the plaintiff's transfer request had been pending for three weeks—and was not approved for another seven weeks. See id. ¶¶ 108, 111. The plaintiff's protected activity on April 3, 2024, was immediately followed by the alleged retaliatory action—the continued delay in approving the plaintiff's transfer request from April 3 until May 21, 2024. This fact is sufficient to support an inference of a causal connection.

### c. Denial of Promotion to Supervising Attorney

The plaintiff has also alleged a causal connection between his protected activity and the defendants' decision not to promote him to Supervising Attorney. The plaintiff engaged in protected activity on April 3, 2024, and was denied the promotion only two days later. See id. ¶ 113. This near-immediate adverse action plausibly supports an inference of causation.

The defendants contend that because the plaintiff was passed over for promotions both before and after he filed his DHR complaint, the protected activity was not a plausible but-for cause of the promotion denial that followed. In support, the defendants argue that an employer's continued pattern of adverse actions against a poorly performing employee does not transform into retaliation simply because the employee submits a complaint. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.")

However, this case is distinguishable from Slattery. In that case and much of its progeny, the employer's adverse job actions "were both part, and the ultimate product, of an extensive period of progressive discipline." Id.; see also Deebs v. Alstom Transp., Inc., 346 F. App'x 654, 657–58 (2d Cir. 2009) (summary order) (affirming the district court's grant of summary judgment against a plaintiff who had a "poor performance record[] and subsequent legitimate firing on the basis of that record" before engaging in protected activity); Forrest v. N.Y.C. Hous. Auth., No. 22-cv-06480, 2023 WL 3203646, at *8–10 (S.D.N.Y. May 2, 2023) (granting a motion to dismiss where the plaintiff's protected activity preceded his termination, but

50

followed months of "gradual adverse job actions" by his employer). The employers' actions in those cases share two traits: they were responsive to employees' unsatisfactory job performance and together constituted a gradually escalating pattern of intervention.

Other cases have found retaliation claims well-pleaded where an employee alleges similar but discrete adverse actions before and after engaging in protected activity. Unlike in Slattery, the defendants' actions in those cases were not escalating steps in a "period of progressive discipline," but rather individual acts based on the defendants' alleged discrimination. Slattery, 248 F.3d at 95. For example, in Syken v. State of New York, the plaintiff alleged retaliation based on a job transfer that closely followed his complaint, which itself had cited a prior failure to promote and other adverse job actions. See No. 02-cv-4673, 2006 WL 3771095, at *8 (S.D.N.Y. Dec. 21, 2006). The court identified a well-pleaded causal connection between the complaint and the later transfer: "[A]lthough the . . . transfer was certainly part of a string of events that Plaintiff might characterize as 'discipline,' all date back to or stem from the initial denial of promotion that plaintiff complains of." Id.; see also Brown v. City Univ. of New York, No. 21-cv-854, 2022 WL 4637818, at *19 n.26 (E.D.N.Y. Sept. 30, 2022) (distinguishing Slattery by concluding that a

51

plaintiff who was denied tenure both before and after raising discrimination complaints did not have "an extensive period of progressive discipline").

In this case, there is no alleged history of discipline against the plaintiff, nor are there allegations of unsatisfactory work. The Amended Complaint alleges distinct instances in which the plaintiff was denied promotion; indeed, the only thread connecting these denials is the defendants' alleged discrimination. The April 5, 2024 failure to promote is best understood as a distinct event, rather than a continuation of "progressive discipline." Therefore, the pre-DHR complaint denials of promotion do not preclude the plaintiff's retaliation claim regarding the defendants' post-DHR complaint denials of promotion. Because the denial of promotion occurred merely two days after the plaintiff requested dismissal of his DHR complaint, the temporal proximity alleged supports an inference of causation.[15]

---

[15] The Amended Complaint also alleges that the plaintiff was excluded from "all deliberations, meetings and responsibilities to which he would ordinarily have been a participant, and to which similarly situated counterparts in NYSIF were routinely invited." Am. Compl. ¶ 176. These broad-brush allegations are too vague and conclusory to state a retaliation claim. See, e.g., Crosby v. Stew Leonard's Yonkers LLC, 695 F. Supp. 3d 551, 573–74 (S.D.N.Y. 2023) (finding the plaintiff's "vague and unsupported allegations that Defendants threatened Plaintiff with disciplinary action . . . without providing any concrete examples of such threats, dates when they occurred, or allege any specific information" insufficient to establish an inference of causation). Therefore, the Court will not consider the alleged exclusion of the plaintiff from unspecified meetings as a basis for a retaliation claim.

The plaintiff has pleaded claims for retaliation under the federal standard. Therefore, he has also met the lower burden imposed by the State and City statutes. <u>See</u> <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013) ("[I]nterpretations of state and federal civil rights statutes can serve only as a <u>floor</u> below which the City's Human Rights law cannot fall."); <u>Edelman</u>, 141 F.4th at 45 n.9 (noting that the NYSHRL must be construed "to align with the NYCHRL's more liberal pleading standard").

In sum, the motion to dismiss the plaintiff's retaliation claims is **denied.**[16]

---

[16] While the defendants did not specifically argue that there is no individual liability under Title VII and the ADEA and therefore the individual defendants cannot be liable for retaliation under those statutes, it is well established that those statutes do not provide for individual liability. <u>See</u> <u>Vega</u>, 801 F.3d at 88; <u>Darcy v. Lippman</u>, 356 F. App'x 434, 437 (2d Cir. 2009) (summary order). Accordingly, the retaliation claims against the individual defendants under Title VII and the ADEA are **dismissed.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted in part** and **denied in part**. The parties are directed to submit a Rule 26(f) report by **August 22, 2025**. The Clerk is respectfully directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          August 8, 2025

                                  John G. Koeltl
                          United States District Judge