```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
-----------------------------------

ISAAC OKAFOR,

                    Plaintiff,

- against -

NEW YORK STATE INSURANCE FUND, ET AL.,

                    Defendants.

24-cv-5680 (JGK)

MEMORANDUM OPINION AND ORDER

-----------------------------------

**JOHN G. KOELTL, District Judge:**

The plaintiff, Isaac Okafor, seeks reconsideration of the Court's Memorandum Opinion and Order dated August 8, 2025, in which the Court partially granted the defendants' motion to dismiss Okafor's amended complaint and dismissed his claims under 42 U.S.C. §§ 1981 and 1983.[1] For the following reasons, the plaintiff's motion for reconsideration is **denied**.

### I.

Reconsideration of a previous Opinion of the Court is an "extraordinary remedy to be employed sparingly in the interests

---

[1] The Court dismissed Okafor's § 1981 claim because he conceded that that statute does not create a private right of action and must instead be enforced under § 1983. Mem. Op. 24, ECF No. 36. Okafor does not challenge that conclusion in his motion for reconsideration.

1

of finality and conservation of scarce judicial resources."[2] In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011). To succeed on a motion for reconsideration, the movant bears a heavy burden. The movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Doe v. N.Y.C. Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983). "A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced...." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). Moreover, "[t]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." Vincent v. Money Store, No. 03-cv-2876, 2014 WL 1673375, at *1 (S.D.N.Y. Apr. 28, 2014).

**II.**

Okafor does not identify controlling law that he previously brought to the Court's attention and that the Court overlooked. Nor does he cite any intervening changes in controlling law or any new evidence that would compel a result other than the one the Court reached in its August 8, 2025 decision.

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Instead, Okafor argues that "the Court overlooked, or did not fully credit, factual allegations and reasonable inferences that — taken together — support a plausible but-for inference at the pleadings stage." Mem. Supp. Pl.'s Mot. for Recons. 1, ECF 40. He points specifically to "direct statements reflecting bias," his "superior qualifications," "a consistent pattern of excluding Nigerians and Black attorneys from leadership roles," "procedural irregularities," and "retaliatory treatment." Id.

But the Court carefully considered and addressed those allegations. For example, the Court acknowledged that the "alleged history" of failing to promote Nigerian and Black attorneys "may support an inference that race, color, and national origin" were "motivating factors," but explained that those allegations were insufficient to establish but-for causation. Mem. Op. 27. The Court also considered the alleged "procedural irregularities" and Okafor's "superior qualifications" in addressing his ADEA and Title VII claims. See, e.g., id. at 16 (noting that Okafor had "previously interviewed and been considered for the Director position while holding his current title" and that "his civil service title could not have been a genuine obstacle to his being considered for the role"); id. at 17 (noting that Okafor has "supplied specific factual allegations that Totaro was less qualified than the plaintiff for the Director position"); id. at 21 (noting that Okafor "has provided specific facts to

3

support his allegation that he was passed over in favor of a less qualified applicant who was not in the protected class").

The "direct statement[] reflecting bias" that the Court allegedly overlooked was McKay's statement that "Wertheim and Fiedler wanted 'someone younger.'" Mem. Supp. Pl.'s Mot. for Recons. 4. But that statement does not support Okafor's claim that his race and national origin were but-for causes of the defendants' decision not to promote him, even when considered "in context with allegations that [the] [d]efendants have consistently excluded Black and Nigerian attorneys from leadership roles." Id.

Finally, Okafor argues that the Court failed to recognize that race and national origin can be but-for causes of the defendants' decision not to promote him even if they were not the sole causes. Mem. Supp. Pl.'s Mot. for Recons. 6. But the Court never suggested otherwise. Rather, it dismissed Okafor's § 1983 claim because he failed to allege specific facts "to support the inference that [he] would have been promoted but for the fact that he is Black and of Nigerian origin." Mem. Op. 26. The Court did observe that "the Amended Complaint alleges that age, not race, color, or national origin, was the but-for cause of the defendants' decision not to promote" Okafor. Id. But the point was not that the defendants' decision not to promote Okafor could have only one but-for cause; it was that nearly all the

4

allegations Okafor highlights involved discrimination based on age, not race or national origin.

### III.

In short, Okafor has not shown "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Doe, 709 F.2d at 789. He may disagree with the Court's conclusion, but that is an insufficient ground for seeking reconsideration. Okafor's motion for reconsideration is therefore **denied**.

The Clerk is directed to close ECF No. 39.

**SO ORDERED.**

**Dated:**   New York, New York
October 3, 2025

_____
John G. Koeltl
**United States District Judge**